IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–01524–REB–KMT

BETH S. MAXWELL, and
MARTIN R. MAXWELL, wife and husband,

    Plaintiffs,

v.

STRYKER CORPORATION, a Michigan corporation,
STRYKER SALES CORPORATION, a Michigan corporation, and
DOES 1-10, inclusive,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on "Plaintiffs' Motion for Leave to File Second Amended Complaint" (Doc. No. 56, filed Jan. 13, 2012 [Mot. Am.].) Defendants Stryker Corporation and Stryker Sales Corporation (hereinafter, collectively, "Stryker") filed their Response on February 6, 2012 (Doc. No. 59 [Resp. Mot. Am.]), and Plaintiffs filed their Reply on February 21, 2012 (Doc. 64 [Reply]).

The court also considers herein "Defendants' Motion to Strike Plaintiffs' Motion for Leave to File Second Amended Complaint" (Doc. No. 58, filed Feb. 6, 2012 [Mot. Strike]), which was filed contemporaneously with Stryker's Response to Plaintiffs' Motion to Amend. Plaintiffs filed their Response to Stryker's Motion on February 21, 2012 (Doc. No. 63 [Resp.

Mot. Strike]) and Stryker filed its Reply on March 9, 2012 (Doc. No. 67 [Reply Mot. Strike].)
Accordingly, these matters are ripe for the court's review and recommendation.

*1.    Motion to Strike*

Stryker seeks to strike (1) Plaintiffs' Motion to Amend because it exceeds the pages limits outlined at Section IV.B.1 of District Judge Robert E. Blackburn's Civil Practice Standards and (2) the exhibits attached to Plaintiffs' Motion to Amend because they are inadmissible under Colorado law, the Federal Rules of Evidence, and/or the United States Constitution. (*See* Mot. Strike.)

The court declines to strike either Plaintiffs' Motion to Amend or the exhibits attached thereto. First, as to Plaintiffs' Motion to Amend, the court acknowledges that Plaintiffs' Motion is seventeen pages, and thus exceeds the fifteen-page limit provided for in Judge Blackburn's Practice Standards. REB Civ. Practice Standards IV.B.1. Furthermore, with exhibits, Plaintiffs' Motion to Amend tops out at an incredible 477 pages. Such a voluminous filing surely violates the spirit of Section IV.B.1 of Judge Blackburn's Practice Standards, which implicitly encourages brevity as part of effective advocacy.

Nevertheless, the court notes that Judge Blackburn's Practice Standards do not expressly set any limits on the number or volume of exhibits that may be attached to a motion. *See id.* And, otherwise, Plaintiffs' Motion to Amend exceeds Judge Blackburn's fifteen-page limit by only two pages. The court notes that it has substantial discretion in determining whether or not to strike noncomplying motions. REB Civ. Practice Standards IV.C.1 ("Motions that are . . . noncomplying . . . *may* be denied without prejudice or stricken *sua sponte*.") (emphasis added).

If it were to strike Plaintiffs' Motion to Amend, the court has no doubt that Plaintiffs could eliminate a few superfluous sections and quickly re-file their Motion to Amend in a manner that complies with Judge Blackburn's Practice Standards.  As such, the court finds that striking Plaintiffs' Motion to Amend as noncompliant would merely delay a ruling on Plaintiffs' Motion and waste both party and judicial resources.  Accordingly, the court declines to strike Plaintiffs' Motion to Amend for failure to comply with REB Practice Standards IV.B.1.

Second, the court declines to strike the exhibits to Plaintiffs' Motion to Amend based on their purported inadmissibility.  Although within the court's sound discretion, "[m]otions to strike are generally disfavored." *Resolution Trust Corp. v. Ascher,* 839 F. Supp. 764, 765-66 (D. Colo. 1993).  Here, Stryker seeks to strike Plaintiffs' exhibits simply because they are inadmissible.  However, to the extent that Stryker is correct that any of Plaintiffs' exhibits are inadmissible, the court is free to disregard such evidence; it is unnecessary to go so far as striking it.  *See Lobato v. Ford,* 05-cv-1437-LTB-CBS, 2007 WL 2593485, at *11 (D. Colo. Sept. 5, 2007) (citing *City of Chanute, Kan. v. Williams Gas Co,* 743 F. Supp 1437, 1445 n. 4 (D. Kan 1990)); *see also United States v. Alessi,* 599 F.2d 513, 514-15 (2d Cir. 1979).  Indeed, to the extent that Stryker's objections to the admissibility of Plaintiffs' exhibits have merit, Stryker should have incorporated its arguments into its Response to Plaintiffs' Motion to Amend, rather than filing a separate motion to strike.  *Allen v. Baxter Int'l Inc.,* No. 04 C 7954, 2006 WL 560608, at *1 n.1 (N.D. Ill. Mar. 2, 2006) (describing a motion to strike as "unnecessary clutter" where it did not serve to expedite or streamline matters).

Accordingly, the court finds that Stryker's Motion to Strike is properly denied. The court would be inclined to consider Stryker's evidentiary objections to Plaintiffs' exhibits concomitant to its consideration of Plaintiffs' Motion to Amend; however, as will be established *infra,* it is unnecessary to do so because, even if the exhibits attached to Plaintiffs' Motion to Amend are considered in a light most favorable to Plaintiffs, the court finds that Plaintiffs have failed meet the applicable threshold for amending their complaint to add a prayer for exemplary damages.

2.   *Motion to Amend*

In their Complaint, Plaintiffs Beth and Martin Maxwell allege that Ms. Maxwell underwent arthroscopic right shoulder surgery on November 2003.[1] (Doc. No. 1, filed June 10, 2011 [Compl.] ¶ 24.) At the conclusion of this surgery, the catheter of a Stryker pain pump[2] was allegedly inserted into Ms. Maxwell's right shoulder joint to administer pain medication. (*Id.* ¶ 24(a).) Plaintiffs maintain that Ms. Maxwell suffered severe cartilage loss in her right shoulder from the use of Stryker's pain pump. (*Id.* ¶ 24(b).) Based on these facts, Plaintiffs bring claims

---

[1] In their Complaint, Plaintiffs also allege that Ms. Maxwell underwent arthroscopic surgery on her left shoulder on or about August 31, 2001. (Compl. ¶ 23.) However, discovery has revealed that Ms. Maxwell's left shoulder was injured by a pain pump manufactured and distributed by companies other than Stryker. (Mot. Am. at 1.) However, as addressed *infra* at footnote four, while Plaintiffs originally sought leave to add these other companies as defendants, they have since withdrawn this aspect of their Motion to Amend because their claims against these other companies are proceeding in Utah. Accordingly, because it does not relate to Stryker (*See* Mot. Am. at 1 n.2), the court does not address Ms. Maxwell's 2001 left shoulder surgery.

[2] Stryker's pain pump is a medical device designed and intended to deliver, via catheter, a continuous dose of pain medication directly into the operative site immediately following surgery. (Compl. ¶ 9.)

4

for strict products liability, negligence, and breach of implied and express warranties. (*Id.* ¶¶ 28-69.)

In their Motion to Amend, Plaintiffs seek to add a prayer for exemplary damages pursuant to Colo. Rev. Stat. § 13-21-102(1)(a).[3] (*See* Mot. Am.) Plaintiffs maintain that a prayer for exemplary damages is appropriate in this case because Stryker willfully marketed its pain pump to the orthopedic community for use in the shoulder joint space—also known as the synovial cavity or intra-articular space (*id.* at 2)—even though it knew that United States Food and Drug Administration (FDA) turned down Stryker's applications for clearance to market its pain pump for use in the shoulder joint space, and even though Stryker never established or even inquired into the safety of using its pain pump in the shoulder joint space. (*See id.* at 10.)

A. ***Legal Standard***

Pursuant to Fed. R. Civ. P. 15(a), "The court should freely give leave [to amend the pleadings] when justice so requires."

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

---

[3] Plaintiffs' Motion to Amend also originally sought leave to amend to add additional parties. However, on March 27, 2012, Plaintiffs' filed their "Notice of Withdrawal of their Arguments Relative to Claims against the Sorenson Defendants" (Doc. No. 68), wherein they "withdraw their arguments and requested relief set forth in their motion relative to the addition of new parties." Accordingly, the court finds that the Plaintiffs' Motion to Amend is partially withdrawn to the extent that it seeks leave to add additional parties, and therefore, the court addresses Plaintiffs' Motion to Amend only to the extent that it seeks leave to add a prayer for exemplary damages.

*Foman v. Davis,* 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)(2)).

In determining whether Plaintiffs' proposed prayer for exemplary damages is permissible, or alternatively, futile, the court is guided by the language of Colo. Rev. Stat. § 13-21-102. *See Am. Econ. Ins. Co. v. William Schoolcraft*, No. 05-cv-01890-BNB, 2007 WL 160951, at *1-2 (D. Colo. Jan.17, 2007) (discussing whether Federal Rule of Civil Procedure 15 or section 13-21-102 governs request to amend complaint to add claim for exemplary damages in diversity action, noting lack of definitive opinion on issue in Tenth Circuit, and deciding to apply state statute); *Witt v. Condominiums at the Boulders Ass'n*, No. 04-cv-02000-MSK-OES, 2006 WL 348086, at *7 (D. Colo. Feb.13, 2006) (finding that court must give effect to Colorado statute in evaluating whether exemplary damages claim properly brought in diversity action); *see also Arapahoe Cnty. Water and Wastewater Pub. Improvement Dist. v. HRD Eng'g, Inc.* (*"Arapahoe Cnty. Water"*), No. 08-cv-01788-WYD-KMT, 2009 WL 3158160, at *5-6 (D. Colo. Sept.25, 2009) (applying without discussion Colo. Rev. Stat. § 13-21-102(1)(a), not Rule 15, to determine whether to allow amendment to add exemplary damages claim in diversity action); *State Farm Mut. Auto Ins. Co. v. Fisher*, No. 08-cv-01687-REB-MEH, 2009 WL 1011194, at *4-5 (D. Colo. April 15, 2009) (applying Colorado exemplary damages statute to determine whether amendment appropriate and considering evidence in light of Rule 15 obligation to freely grant leave to amend).

Under Colorado law, an award of exemplary damages is permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct."

Colo. Rev. Stat. § 13-21-102(1)(a). Here, Plaintiffs maintains that a prayer for exemplary damages is appropriate because Stryker's conduct contributing to Plaintiffs' injuries was willful and wanton. (Mot. Am. at 4.)

"Willful and wanton conduct" is conduct "purposefully committed which the actor must have realized was dangerous, done heedlessly and recklessly, without regard to consequences or to the rights and safety of others, particularly the plaintiff." Colo. Rev. Stat. § 13-21-102(1)(b). "Where the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements" are met. *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005) (citations omitted); *see also U.S. Fire Ins. Co. v. Sonitrol Mgmt. Corp.*, 192 P.3d 543, 549 (Colo. App. 2008) (quoting *Forman v. Brown*, 944 P.2d 559, 564 (Colo. App. 1996)) (describing willful and wanton conduct as conduct that "exhibits an intent consciously to disregard the safety of others [and] extends beyond mere unreasonableness").

"A claim for exemplary damages . . . may be allowed by amendment to the pleadings only after the exchange of initial disclosures . . . and the plaintiff establishes *prima facie* proof of a triable issue." Colo. Rev. Stat. § 13-21-102(1.5)(a). In order to establish *prima facie* proof of a triable issue, "[p]laintiffs must articulate '[a] reasonable likelihood that the issue [of whether a defendant's conduct was willful and wanton] will ultimately be submitted to the jury for resolution.'" *Arapahoe Cnty. Water*, 2009 WL 3158160, at *6 (quoting *Leidholt v. Dist. Court*, 619 P.2d 768, 771 (Colo. 1980)). The plaintiff is not required to show that the evidence is sufficient to survive a defendant's motion for summary judgment on the issue of exemplary

7

damages.  *E & S Liquors*, *Inc.*, 2009 WL 837656, at *2 (differentiating the standard for granting leave to amend from evaluation of whether evidence is sufficient to defeat summary judgment). When determining whether a pleading amendment should be permitted, the court views the evidence in the light most favorable to the plaintiff.  *Am. Econ. Ins. Co.*, 2007 WL 160951, at *3; *E & S Liquors, Inc.*, 2009 WL 837656, at *2; *see also Leidholt*, 619 P.2d at 769 (noting that the Court "should grant the plaintiff some leeway in establishing his *prima facie* case").

  **B.**  *Analysis*

  Here, Plaintiffs premise their proposed prayer for exemplary damages primarily on the fact that Stryker marketed its pain pump for use in the shoulder joint space, despite the fact that the FDA denied Stryker clearance, under the so-called "§ 510(k) process," to so market its pain pump.  (Mot. Am. at 5-10.)  However, based in part upon a recent decision from the United States District Court for the District of Minnesota, in which the court denied leave to amend to add a claim for punitive damages under a legal framework and factual circumstances similar to those presented here, the court finds that the mere fact that Stryker failed to obtain FDA approval to market their pain pump for use in the joint space is insufficient to establish *prima facie* proof that Stryker acted willfully and wantonly.  *Haley v. I-Flow, LLC,* --- F. Supp. 2d ----, 2012 WL 1185680 (D. Minn. April 10, 2012).

  In *Haley,* the court considered whether the FDA's failure to approve the defendant's pain pump for use in the shoulder joint space presented *prima facie* evidence that the defendant acted with "deliberate disregard," as required under Minnesota law to sustain a claim for punitive damages.  *See* --- F. Supp. 2d ----, 2012 WL 1185680, at *5.  The court began by contrasting the

8

FDA's 510(k) approval process from the much more rigorous premarket approval (PMA) process. *Id.* at *6-7. More specifically, the court noted that, whereas the PMA is a "time consuming process" requiring "'the applicant to demonstrate a 'reasonable assurance' that the device is both 'safe . . . [and] effective under the conditions of use prescribed, recommended, or suggested in the proposed labeling thereof,'" the "significantly easier and quicker" § 510(k) process requires only that an applicant establish that a device is "'substantially equivalent' to pre-existing devices." *Id.* at *7 (citing 21 U.S.C. § 360e(b)(1)(B)). Importantly, although "a device may not be marketed in the United States until the § 510(k) applicant receives a letter declaring the device substantially equivalent," FDA clearance of the device does not mean that it is "officially approved by the FDA as being safe and effective." *Id.* (citing 21 C.F.R. § 807.97). Instead, it is simply "said to be § 510(k)-cleared for marketing," or, "in other words . . . substantially equivalent to a medical device already on the market." *Id.*

Based on this framework, the *Haley* court concluded that the mere fact that the FDA had not cleared the defendant's pain pump for use in the intra-articular site did not establish that the "FDA [had] concluded that the use of the [pain pump] in the intra-articular joint space after orthopedic surgery was *not* safe and effective." *Id.* at *7-8 (emphasis in original). Rather, "[a]t most, the FDA was simply saying that its previous §510(k) clearance for the [] pain pump did not encompass the indication for use in the intra-articular site and thus it would require additional information . . . to determine the safety and effectiveness of the device with this use." *Id.* at *8. In addition, the court noted that there was "nothing in the documents or testimony submitted by Plaintiff about [the defendant's] 510(k) application process that show[ed] that [the

defendant] knew that there was any risk that use of the [] pain pump in the articular space would cause debilitating cartilage destruction." *Id.* Accordingly, the court concluded that the plaintiff had failed to proffer *prima facie* evidence that the defendant knew "it was not safe to use the pain pump in orthopedic surgery because it would destroy a patient's cartilage. *Id.*[4]

The court finds that the "deliberate disregard" standard considered in *Haley* is substantially similar, if not identical, to the threshold for sustaining a claim for punitive damages under Colorado law. *Compare Haley* (citing Minn. Stat. § 549.20, subd. 1(a)-(b)) ("the statute requires: (1) knowledge of or an intentional disregard of facts that make injury to the plaintiff's rights probable; and (2) action despite such knowledge") *with* Colo. Rev. Stat. § 13-21-102(1)(b) ("Willful and wanton conduct" is conduct "purposefully committed which the actor must have realized was dangerous, done heedlessly and recklessly, without regard to consequences or to the rights and safety of others, particularly the plaintiff.") Additionally, the court finds that several other decisions support the *Haley* court's conclusion that a lack of FDA clearance under the § 510(k) process does not mean that a device is unsafe. *See Minisan v. Danek Med., Inc.,* 79 F. Supp. 2d 970, 978 (N.D. Ind. 1999) (citing *Sita v. Danek Med., Inc.*, 43 F.Supp.2d 245, 257

---

[4] The court acknowledges that a decision from this district reached the opposite conclusion. (*See* Mot., Ex. 60; *see also Hackett v. Breg,* Case No. 10-cv-01437-RBJ-KMT, Doc. No. 190, Jury Trial Tr. at 2033:7-2045:5 [*Hackett* Trial Tr.].) In *Hackett*, near the end of trial, the court concluded that a prayer for punitive damages was appropriate because the evidence at trial suggested that "the FDA went through this back-and-forth with [the defendant] and kept telling [the defendant] to take out any indication for use for intraarticular [sic] continuous infusion of pain medication." (*Hackett* Trial Tr. at 2042:23-2043:1.) Additionally, a defense witness admitted that the FDA told the defendant to remove that indication "because it had not been proven to be safe and effective for that use." (*Id.* at 2043:1-3.) This evidence is not present in this case, however, distinguishing it from *Hackett*.

10

(E.D.N.Y. 1999) ("Prior medical device related litigation has made clear that the fact that a medical device has not been approved by the FDA for a particular use does not mean that the device is unsafe, much less that the device is defective"); *Holland v. Smith & Nephew Richards,* 100 F. Supp. 2d 53, 56 (D. Mass. 1999) (same).

Therefore, consistent with *Haley,* the court finds that, even assuming that the FDA denied Styker § 510(k) clearance based on a purported "lack of safety data"—which, itself, is less than clear[5]—this fails to establish that the FDA concluded that Stryker's pain pump was not safe and effective. *Haley,* -- F. Supp. 2d ----, 2012 WL 1185680, at *7-8. Rather, the mere fact that the FDA did not clear Stryker's pain pump "for a particular use does not mean that the product is not in fact suitable for that purpose; it simply means that the FDA has not cleared it." *Holland,* 100 F. Supp. 2d at 56.

---

[5] A review of Plaintiffs' evidence relating to the FDA's approval of Stryker's pain pump does not clearly corroborate Plaintiffs' position that the FDA denied Stryker § 510(k) clearance to market its pain pump in the joint space due to a "lack of safety data." (*See* Mot. Am. at 6.) Instead, the FDA's March 3, 1999 and June 5, 2011 letters respectively indicate that McKinley Medical, Stryker's predecessor in interest, and Stryker were in fact "*permitted* to begin marketing [their] device as described in [their] 510(k) premarket notification." (Mot. Am., Ex. 6, 11) (emphasis added). At no point in those letters did the FDA suggest that McKinley Medical and Stryker were not permitted to market their pain pumps for use in the joint space. (*See id.*) Although Stryker's representatives have since acknowledged that the FDA declined to approve Stryker's pain pump for use in the joint space (*id.,* Ex. 9, 30(b)(6) Deposition of Stryker Corp., 198:19–199:3), there is no evidence to suggest that decision was premised on a lack of safety data. In fact, Stryker's representatives explicitly rejected the premise that the FDA concluded that Stryker's pain pump was not safe for use in the joint space. (*Id.* 199:22-200:5.) Nevertheless, it is not important to clarify this ambiguity as Plaintiffs' arguments fail *even if* the FDA denial of § 510(k) clearance was based on a purported lack of safety data.

Additionally, Plaintiffs have not submitted any evidence suggesting that Stryker had actual knowledge of a risk of harm associated with use of its pain pump in the joint space at the time of Ms. Maxwell's surgery. A prayer for exemplary or punitive damages might well be appropriate where, in addition to a lack of FDA approval for intra-articular use, there is also evidence that the defendant knew of a safety risk associated with administering a pain pump in the joint space. *See, e.g., Schoenborn v. Stryker,* 801 F. Supp. 2d 1098, 1102-03 (denying summary judgment as to a prayer for punitive damages where, in addition to a lack of FDA approval, there was some evidence that Stryker had actual knowledge of the risk of harm allegedly caused by pain pumps at the time of the plaintiff surgery). *See also Schott v. I-Flow Corp.,* 696 F. Supp. 2d 898, 906 (S.D. Ohio 2010) (denying summary judgment as to claims for punitive damages where the plaintiffs proffered evidence that the defendants knew that its pain pump could be causing chondrolysis, and that proposed warnings about chondrolysis were "nixed" by the defendant's CEO).

However, here, Plaintiffs' evidence suggesting that Stryker knew of a risk of chondrolysis associated with intra-articular use of its pain pump clearly postdates Ms. Maxwell's surgery. For example, Plaintiffs proffer evidence suggesting that, in early 2005, Stryker's paid consultant, Dr. Lonnie Paulos, alerted Stryker of a connection between pain pumps and chondrolysis (Mot. Am. at 11, Ex. 39-40) , and that, in December 2005, Dr. Charles Beck provided Stryker with a draft copy of his paper reporting cases of chondrolysis involving pain pumps. (*id.* at 14, Ex. 45.) Because these events each occurred well over a year *after* Ms. Maxwell's 2003 surgery, they are not probative of whether Stryker consciously disregarded

12

Plaintiffs' safety at the time of her surgery. *Cf. Pavelko v. Breg, Inc.,* 09cv01461-PAB-KMT, 2011 WL 782664, at *8 (D. Colo. Feb. 28, 2011) (granting summary judgment on the plaintiff's design defect claim where there was no evidence suggesting that the defendant knew or should have known of the risk of chondrolysis from intra-articular use of the defendant's pain pump at the time of the plaintiff's surgery); *U.S. Fire Ins. Co.*, 192 P.3d at 549.

Finally, Plaintiffs argue that Stryker "had a duty to provide instructions for safe use of their products," as well as "a duty to test their products," and willfully violated these obligations by failing to disclose that its pain pump "had never been safety tested for use in the joint and had failed to obtain FDA clearance." (Reply Mot. Am. at 3.) However, the court finds that there is no broadly recognized duty to test; rather, generally, a duty to test does not arise unless or until the defendant is confronted with adverse reactions. *Hawkinson v. A.H. Robinson,* 595 F. Supp. 1290, 1309 (D. Colo. 1984); *cf. Pavelko,* 2011 WL 782664, at *8 (finding that a rational jury could not find that defendant's product testing was negligent where there was "no evidence of scientific studies or public presentations linking chondrolysis and intra-articular infusion of anesthetics before [the plaintiff's] surgery in 2003.") Plaintiffs have not shown that Stryker knew of any adverse reactions as a result of administering pain pumps in the shoulder joint space at the time of Ms. Maxwell's surgery. Accordingly, Stryker did not have a duty to test its pain pump, nor to disclose that it had not been safety tested.

Relatedly, the court agrees with other courts that there is no duty to disclose a product's regulatory history. *See Phillippi v. Stryker Copr.,* 2010 WL 2650596, at *2 (E.D. Cal. July 1, 2010); *Rodriguez v. Stryker Corp.,* No. 2:08-0124, 2011 WL 31462, at *10-11 (M.D. Tenn. Jan.

13

5, 2011). This is especially true here, where, as discussed above, any risk of chondrolysis was unknown at the time of Ms. Maxwell's surgery and the lack of § 510(k) clearance for use in the joint space did not suggest that Stryker's pain pump was unsafe. *Rodriguez,* 20111 WL 31462, at *10.

Altogether, the court finds that Plaintiffs have failed to sustain their burden of presenting *prima facie* proof that Stryker acted purposefully, without regard to Plaintiffs' safety, in a manner that it "must have realized was dangerous." Colo. Rev. Stat. § 13-21-102(1)(b). Specifically, exemplary damages would be unwarranted in this case because (1) the purported lack of § 510(k) clearance does not establish that Stryker's pain pump was unsafe or ineffective for use in the shoulder joint space, (2) Plaintiffs have not proffered any evidence that Stryker knew of or consciously disregarded a safety risk associated with intra-articular use of its pain pump at the time of Ms. Maxwell's surgery, and (3) Stryker did not have a duty to test its pain pump or disclose its regulatory history under these circumstances. Accordingly, the court finds that Plaintiffs' Motion to Amend is properly denied.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendants' Motion to Strike Plaintiffs' Motion for Leave to File Second Amended Complaint" (Doc. No. 58) and "Plaintiffs' Motion for Leave to File Second Amended Complaint" (Doc. No. 56) be DENIED.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 20th day of April, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge