**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 11-cv-1524-REB-KMT

BETH S. MAXWELL and MARTIN R.
MAXWELL, wife and husband,

 Plaintiffs,

v.

STRYKER CORPORATION, a Michigan
Corporation, and STRYKER SALES
CORPORATION, a Michigan Corporation,
and DOES 1-10, inclusive,

Defendants.

**MOTION TO LIMIT OR EXCLUDE DEFENDANTS' EXPERTS AS CUMULATIVE**

**INTRODUCTION**

This is a products liability action, in which Plaintiffs claim that Defendants improperly promoted and sold a medical device known as a pain pump to be used in the shoulder joint space without establishing or even inquiring into the safety of the device, and that Defendants' pain pump caused the destruction of the cartilage in Plaintiff Beth Maxwell's shoulder joint, a condition called chondrolysis.

On May 3, 2012, Defendants filed their designation of expert witnesses, identifying twelve retained experts and two non-retained experts that they intend to call at trial, including several orthopedic surgeons. Three of Defendants' retained

orthopedic surgeon experts, Dr. Michelle Donaldson, Dr. Wayne Z. Burkhead, and Dr. Robert Pedowitz, offer opinions regarding general causation and specific causation.

These experts' opinions are identical.

The testimony of these experts is unnecessarily cumulative, which causes two problems: First, it requires Plaintiffs to incur the expense of deposing three very expensive experts (Dr. Burkhead, for example, has charged some $2,000 per hour for depositions and requires that two of those hours be prepaid, regardless of the actual length of the deposition). Second, it is obviously prejudicial to Plaintiffs for Defendants, who have far greater access to resources, to retain several expensive experts to come into court and tell the jury the very same thing.

The fair thing to do, and what the law requires, would be for each side to retain just one expert within a discipline to render their expert opinion regarding one topic. Plaintiffs are willing and have always intended to do so. Defendants have refused, without justification, forcing Plaintiffs to seek the Court's assistance in the present motion.

Plaintiffs ask this Court to limit Defendants to one orthopedic surgeon expert per issue area to prevent "undue delay, waste of time, or needless presentation of cumulative evidence," to discourage wasteful discovery, and to promote the just, speedy, and inexpensive determination of this case.

## FACTUAL BACKGROUND

1.      On January 3, 2012, Plaintiffs served their designation of expert witnesses, naming eight retained expert witnesses.[1]

2.      Also on January 3, 2012, Plaintiffs disclosed Plaintiff Beth Maxwell's treating physician, Dr. David Schneider, as a non-retained expert, as required by Rule 26(a)(2)(C). Plaintiffs disclosed the scope of Beth's treating physician's anticipated testimony as being limited to the information contained in his medical records.[2]  Dr. Schneider has not been deposed.

3.      On May 3, 2012, Defendants served their designation of expert witnesses, naming twelve retained experts and two non-retained experts:  (1) Wayne Z. Burkhead, Jr., M.D. (an orthopedic surgeon); (2) Christine B. Chung, M.D. (a radiologist); (3) Michelle Donaldson, M.D. (an orthopedic surgeon); (4) Robert A. Pedowitz, M.D., Ph.D. (an orthopedic surgeon); (5) Charles H. Hennekens, M.D., Dr.P.H. (an epidemiologist); (6) Mark D. Markel, D.V.M., Ph.D. (a veterinarian); (7) Ronald M. Johnson (a regulatory expert); (8) William J. Mallon, M.D. (an orthopedic surgeon); (9) Lydia B. Zablotska, M.D., Ph.D. (an epidemiologist); (10) Rajesh Bazaz, M.D. (an orthopedic surgeon); (11) Margot Burns, MS, CRC, CLCP (Burn Life Care Planner); (12) Michael A. Zeeb, CPA, CFE; (13) Doug Staunton (Engineer); and (14) Brian Ilfeld, M.D. (an orthopedic surgeon).[3]

4.      Three of the orthopedic surgeons disclosed as retained experts, Drs. Michelle Donaldson, Wayne Burkhead, and Robert Pedowitz, all offer opinions

---

[1] *See* Plaintiffs' Expert Disclosures, attached hereto as Exhibit 1.
[2] *Id.*
[3] *See* Defendants' Expert Disclosures, attached hereto as Exhibit 2.

regarding general causation (whether pain pumps can cause chondrolysis) and specific causation (whether the pain pump used in Beth Maxwell's shoulder caused her chondrolysis). These experts' opinions are identical.

5. Specifically, regarding their general causation testimony, Dr. Donaldson reviews her experience with pain pumps, the history of pain pump use and chondrolysis, and the medical literature, and then provides her opinion as an orthopedic surgeon that "it is not reasonable to conclude scientifically that any cause and effect relationship has been established between" pain pumps and chondrolysis, and that there is no scientific data available today suggesting that pain pumps cause chondrolysis.[4] Dr. Pedowitz reviews his experience with pain pumps, the history of pain pump use and chondrolysis, and the medical literature, and then provides his opinion as an orthopedic surgeon "that a causal relationship between [pain pumps] and the subsequent development of chondrolysis of the glenohumeral joint has not been established."[5] Dr. Burkhead reviews his experience with pain pumps, the history of pain pump use and chondrolysis, and the medical literature, and then offers his opinion as an orthopedic surgeon that "there is no reliable evidence that establishes a causal relationship between pain pumps and chondrolysis."[6]

6. As for their specific causation testimony, Dr. Donaldson opines that Beth Maxwell's shoulder "condition is not chondrolysis; rather she has developed

---

[4] *See* Expert Report of Dr. Michelle Donaldson (Donaldson Report), under the "Summary" section of her report (her report contains no page numbers), attached hereto as Exhibit 3.
[5] Expert Report of Dr. Robert Pedowitz (Pedowitz Report), the last few summary paragraphs in "VIII. Opinions regarding causality" (the report contains no page numbers), attached hereto as Exhibit 4.
[6] Expert Report of Dr. Wayne Z. Burkhead (Burkhead Report), the last paragraph in "Totality of the Evidence" (the report contains no page numbers, attached hereto as Exhibit 5.

osteoarthritis."[7] Dr. Pedowitz opines that Beth Maxwell's shoulder condition is not chondrolysis; rather she "had degenerative arthritis."[8] Dr. Burkhead opines that Beth Maxwell "does not have chondrolysis;" rather she had preexisting arthritis.[9]

7. Plaintiffs' counsel has conferred with Defendants' counsel regarding this unnecessary duplication on several occasions, including in other "pain pump" cases in which Defendants have disclosed the same stable of duplicative orthopedic experts.

8. Defendants first claimed that the duplication is a necessary result of Defendants' many, many pain pump cases across the country, and that Defendants have so many trials on calendar that they require flexibility in determining which expert will testify at trial.[10]

9. However, when offered an accommodation to address this concern, namely, an agreement to allow Defendants to choose an expert closer to trial in exchange for their agreement not to present multiple experts in the same discipline to say the very same thing, Defendants refused. They acknowledged that "no judge will allow purely duplicative testimony," but were unwilling to agree not to present such testimony.[11]

10. Concurrent with these ongoing and repeated demands that injured plaintiffs accommodate Defendants' scheduling problems, Defendants have taken steps to make their own schedule (an everyone else's) even more complicated, including twice

---

[7] Donaldson Report (Ex. 3), under the "b. Impressions and Opinions" section of her report.
[8] Pedowitz Report (Ex. 4), under the "Conclusions: Beth Maxwell" section of his report.
[9] Burkhead Report (Ex. 5), under the "Opinion re Cause" section of his report.
[10] *See* e-mail chain between Jessica Andrew, counsel for Plaintiffs, and Wayne Wolff, counsel for Defendants (memorializing telephone conversation between counsel), attached hereto as Exhibit 6.
[11] *See* e-mail chain (Ex. 6).

opposing motions to transfer, coordinate and consolidate Defendants' many, many pain pump cases in a multidistrict litigation,[12] and rejecting, without reasonable explanation, requests that Defendants' experts retained to opine on specific causation in several cases be deposed at one time rather than requiring everyone to incur the time and expense of multiple short depositions of the very same witness.[13]

## ARGUMENT

**I. The Court Should Limit Defendants to One Expert Witness in Each Particular Field of Expertise to Minimize Waste of Time, Needless Presentation of Cumulative Evidence, and Prejudice to Plaintiffs.**

The Court has discretion to determine the suitability of expert testimony.[14] The Court may exclude even relevant expert testimony "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[15]

It is well established that in the exercise of its discretion a court may limit the number of expert witnesses permitted to testify about a particular subject.[16] Because the

---

[12] *See* Defendants' June 2008 and January 2010 oppositions to MDL motions, attached hereto as Exhibits 7 and 8, respectively.
[13] *See, e.g.,* e-mail from Kevin Costello, counsel for Defendants, refusing to produce Defendants' experts to be deposed regarding two plaintiffs, attached hereto as Exhibit 9; e-mail from Wayne Wolff, counsel for Defendants, again refusing to produce Defendants' experts to be deposed regarding more than one plaintiff, attached hereto as Exhibit 10.
[14] *See e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997).
[15] FED. R. EVID. 403.
[16] *See, e.g., Chapman v. United States,* 169 F.2d 641, 642 (10th Cir.), *cert. denied,* 335 U.S. 860 (1948); *Riley v. Dow Chem. Co.,* 123 F.R.D. 639, 640 (N.D. Cal. 1989) ("The courts' inherent power to limit the number of experts at trial has long been recognized.") (citation omitted); 6 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1908, at 753 (James H. Chadbourn ed., 1976) ("This result is universally accepted; the trial court in its discretion may limit the number of expert witnesses"). *See generally* B.H. Glenn, Annotation, *Limiting Number of Noncharacter Witnesses in Civil Case,* 5 A.L.R.3D

testimony of expert witnesses is opinion testimony rather than evidence of facts, courts generally have more latitude to limit the number of expert witnesses than other witnesses.[17]

"[T]he testimony of one expert witness for each side is usually enough."[18]

> Ordinarily it should be sufficient for each side to present, say, a single orthopedist, oncologist, or rehabilitation specialist. . . . If a party offers testimony from more than one expert in what appears to be a distinct discipline, the party should justify the need for it and explain why a single expert will not suffice. Attorneys may try to bolster the weight of their case before the jury by cumulative expert testimony, thereby adding cost and delay. The court should not permit such cumulative evidence . . . .[19]

Allowing multiple experts to testify regarding the same issue is unnecessary and would only waste the time and resources of the Court, the jury, and the parties.

Furthermore, it is unfair. Expert testimony is very expensive. "[T]o permit an excessive number of expert witnesses to testify may unjustly favor the wealthy."[20] Defendants have far greater access to resources to pay for expert testimony than Plaintiffs do. "[I]f legal controversies are to be determined by the preponderance of voices, wealth, in all litigation in which expert evidence is important, may prevail almost of course."[21] The jury may be tempted to weigh the evidence by the number of experts

---

169, § 3[b], at 181-82 & n.6 and cases cited therein.

[17] *See, e.g., Maupin v. Maupin,* 164 S.E. 557, 560 (Va. 1932); 6 WIGMORE, *supra* note 4, § 1908, at 751.

[18] Glenn, *supra* note 4, 5 A.L.R.3D at 182 (footnote omitted). *See also Wetherill v. University of Chicago,* 565 F. Supp. 1553, 1564-65 & n.25 (N.D. Ill. 1983) (the rule that only one expert on each subject for each party will ordinarily be permitted "serves as a sound principle to follow unless there are substantial contraindications"); *Fraser v. Jennison,* 3 N.W. 882, 895 (Mich. 1879) ("for the purposes of justice the examination of two conscientious and intelligent experts on a side is commonly better than to call more").

[19] Federal Judicial Center, Reference Manual on Scientific Evidence 48 (2d ed. 2000).

[20] Glenn, *supra* note 4, 5 A.L.R.3d at 182 (footnote omitted).

[21] *Fraser,* 3 N.W. at 895.

testifying for each side. A defendant should not be allowed to bury a plaintiff in expert testimony.[22]

If Plaintiffs do not match the Defendants expert for expert, the jury will likely conclude (improperly) that Defendants' case is much stronger than Plaintiff's because the defense presented more experts. The typical cautionary instruction that the weight of the evidence is not to be determined by the number of witnesses testifying for a given side "cannot always suffice when a poor man's single witness is matched against an opposing forensic parade."[23] Regardless of how the jury is instructed, it is human nature to give more weight to an opinion the more experts there are who agree with it; three expert opinions are more convincing to the average juror than one in almost every case.

The rules of evidence do not contemplate a trial in which the party who parades the most experts before the jury wins. The Court should "discourage attorneys from parading additional experts before the Court in the hope that added testimony will improve on some element of the testimony by the principal expert."[24] Plaintiffs could try to match the Defendants expert for expert, but that would come at a tremendous and unnecessary cost to Plaintiffs and would be inconsistent with Rule 403's prohibition against "needless presentation of cumulative evidence" and the dictate of Federal Rule

---

[22] *See Saari v. Dunwoody Iron Mining Co.,* 21 N.W.2d 94, 96 (Minn. 1945) ("ordinarily, the injured person is less able to meet the expense connected with the procurement of experts than is his adversary," so the number of experts was properly limited to prevent the more affluent party from "overwhelming his adversary" with expert testimony).
[23] *Ferrell v. Baxter,* 484 P.2d 250, 268 (Alaska 1971).
[24] *Leefe v. Air Logistics, Inc.,* 876 F.2d 409, 411 (5th Cir. 1989).

of Civil Procedure 1 that establishes civil proceedings be conducted so as "to secure the just, speedy, and inexpensive determination of every action and proceeding."

Plaintiffs have designated one orthopedic expert to review the medical literature and opine on general causation, and to opine on specific causation (Peter R. Kurzweil, M.D.).[25] Plaintiffs have also designed Dr. Stephen Trippel, who has particular expertise regarding cartilage, to opine regarding the science of cartilage and the state of knowledge at the time Defendants began selling their pain pumps for use in the joint.[26] Defendants have argued elsewhere that Dr. Trippel's opinions are duplicative of Dr. Kurzweil's opinions because they both address medical literature post-dating Defendants' entry into the orthopedic market to sell pain pumps.[27] Importantly, however, Dr. Trippel's expert report was prepared at the request of other plaintiffs' lawyers for other purposes. Plaintiffs here have no intention of asking Dr. Trippel to opine regarding the medical literature addressed by Dr. Kurzweil. Unlike Defendants, Plaintiffs believe retaining experts to say precisely the same thing is unfair, which is why Plaintiffs, unlike Defendants, have neither the desire nor the intention of doing so and gladly agree not to do so.

Defendants, on the other hand, have designated three orthopedic surgeons to offer *identical opinions* regarding general causation and specific causation. There is simply no justification for permitting three retained experts within the same area of expertise to offer identical opinions. The court should limit Defendants to one general

---

[25] *See* Expert report of Dr. Peter Kurzweil, M.D., attached hereto as Exhibit 11.
[26] *See* Expert report of Dr. Stephen Trippel, M.D., attached hereto as Exhibit 12.
[27] *See, e.g. Mack v. Stryker*, Civ. No. 10-cv-2993 (D. Minn.), Stryker Defendants' Opposition to Plaintiffs' Motion to Limit or Exclude Experts as Cumulative, doc. 66, filed May 16, 2012, copy attached hereto as Exhibit 13.

causation orthopedic surgeon expert and one specific causation orthopedic surgeon expert.

**II. Defendants Should be Required to Pare Down Their Expert Witness Designation Now Rather Than After Discovery to Avoid Wasting Time and Money Deposing Expert Witnesses Who Will Not be Allowed to Testify at Trial.**

The Court can and should address this issue now so that Plaintiffs do not have to incur the expense and inconvenience of deposing expert witnesses who will not be permitted to testify at trial due to the cumulative nature of their testimony. This is particularly important where Defendants' conduct in this litigation has included repeated and unexplained refusals to allow the parties to save time and money by deposing one expert regarding more than one plaintiff. The policies underlying the Federal Rules of Evidence and Federal Rules of Civil Procedure support this conclusion.

For example, Federal Rule of Civil Procedure 16(c)(2)(D) expressly recognizes that, at any pretrial conference, "the court may consider and take appropriate action on" such matters as "avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702."

The Idaho Supreme Court relied in part on Idaho's equivalent of rule 16(c)(2)(D) (Idaho Rule of Civil Procedure 16(d)(4)) in reversing a trial court's refusal to limit the number of designated experts before trial.[28] What the Idaho Supreme Court said in that case is instructive here as well:

> We have long recognized that courts have broad, inherent powers to control discovery. *This includes the inherent authority to limit the*

---

[28] *Edmunds v. Kraner*, 136 P.3d 338 (Idaho 2006). *See also Pulp v. Ransdell,* 833 P.2d 965, 971 (Kan. 1992) (the trial court did not commit error in limiting the number of expert witnesses at the status or discovery conference).

> *number of expert witnesses during discovery.* We have also advised that "judges should not hesitate to exercise appropriate control over the discovery process."
>
> Our rules of civil procedure and the express purposes behind our discovery rules likewise recognize the court's authority to limit the number of expert witnesses.... Rule 1(a) requires that the rules of civil procedure "be liberally construed to secure the just, speedy, and inexpensive determination of every action and proceeding. . . ."[29] Effective cross-examination and rebuttal of expert witnesses requires advanced preparation and knowledge of that expert's testimony. *Neither effective cross-examination nor effective discovery designed to achieve "just, speedy, and inexpensive determination of every action" can take place when one party is allowed to disclose an oppressive number of expert witnesses and the trial court refuses to consider limiting expert testimony. . . .*
>
> At the very least the trial court should have considered the Edmunds' request to limit the number of experts as a discovery issue and examined the purposes behind our discovery rules when ruling on the motion.[30]

The same policies apply under the federal rules as well. The Court should not allow Defendants to designate "an oppressive number of expert witnesses" and require Plaintiffs to depose them all before limiting the number of experts.

## CONCLUSION

It is in the interests of the Court, the parties and the jury that the trial be conducted as expeditiously as possible. Defendants have continuously engaged in behavior that has compromised this goal, including insisting on presenting cumulative and duplicative expert testimony that will not assist the trier of fact but will only cause undue delay, waste of time, and needless presentation of cumulative evidence and unduly prejudice Plaintiffs. Plaintiffs therefore ask the Court to enter an order

---

[29] *Cf.* Fed. R. Civ. P. 1 (same).
[30] *Edmunds,* 136 P.3d at 349 (emphasis added and citations omitted).

precluding either party from presenting testimony of retained experts within the same discipline to render the very same opinions and requiring the parties to narrow their retained experts now, as Plaintiffs have done.

Dated this 24th day of May, 2012　　　　DEWSNUP, KING & OLSEN

　　　　　　　　　　　　　　　　　　　　/s/ Jessica A. Andrew_____
　　　　　　　　　　　　　　　　　　　Jessica Andrew (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　36 S. State Street, Suite 2400
　　　　　　　　　　　　　　　　　　　Salt Lake City, UT 84111

　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*

12

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2012, I caused the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO LIMIT OR EXCLUDE DEFENDANTS' EXPERTS AS CUMULATIVE** to be filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of the filing to counsel of record, as follows:

Maureen Reidy Witt
J. Lee Gray
HOLLAND & HART LLP
6380 South Fiddlers Green Circle, Suite 500
Greenwood Village, CO 80111
Tel.: (303) 290-1600

Vaughn A. Crawford
SNELL & WILMER LLP
One Arizona Center
Phoenix, AZ 85004
Tel.: (602) 386-6000

Mario Horwitz
SEDGWICK LLP
801 S. Figueroa St., 19th Fl.
Los Angeles, CA 900017
Tel.: (213) 426-6900

***Attorneys for Defendants***

_/s/ Jessica Andrew_____