Civil Action No. 11-cv-01524-REB-KMT

BETH S. MAXWELL and MARTIN R. MAXWELL,
      Plaintiffs,

vs.

STRYKER CORPORATION, *et al.*,
      Defendants

---

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO LIMIT OR EXCLUDE DEFENDANTS' EXPERTS AS CUMULATIVE

"While district judges have broad discretion to exclude expert witnesses, they may not do so arbitrarily, or on the basis of mere numbers." *Nalder v. West Park Hosp.*, 254 F.3d 1168, 1173 (10th Cir. 2001). The Court should not strike expert witnesses with overlapping qualifications based on the "mere possibility that duplicative testimony could result." *Id.* at 1174. Plaintiffs seek to exclude or limit the testimony of Drs. Pedowitz, Burkhead and Donaldson based on the fact that they are three orthopedic surgeons who will testify within the broad categories of "general causation and specific causation." Their arguments are undercut by several facts:

- The Scheduling Order entered by the Court and stipulated to by the parties contains no limitation on the number of expert witnesses.

- Both sides have designated multiple orthopedic surgeons as expert witnesses to opine on various issues of specific and general causation; Plaintiffs have designated Drs. Kurzweil, Trippel and Schneider, as

compared to Stryker's experts at issue here, Drs. Pedowitz, Burkhead and Donaldson.

- Plaintiffs have received fulsome Rule 26 disclosures from Drs. Pedowitz, Burkhead and Donaldson, obviating the need for discovery expense in obtaining their deposition testimony. Moreover, Plaintiffs counsel has already deposed Drs. Pedowitz and Burkhead in this litigation, and Dr. Donaldson's deposition is scheduled for June 21, 2012.

- Contrary to Plaintiffs' broad assertions, the expert opinions from Drs. Pedowitz, Burkhead and Donaldson are not cumulative, but each relates to distinct issues.

- Plaintiffs are represented by counsel that are part of a "consortium" of law firms that has brought hundreds of actions across the country and rely on the same experts to advance their claims.

Plaintiffs' fear of "a poor man's single witness [being] matched against an opposing forensic parade" is unfounded. (Pls.' Mot., ECF No. 73, at 8.) Plaintiffs have designated the same number of causation experts to testify regarding similar issues. This motion attempts to tie Defendants' hands while allowing Plaintiffs the very numerosity they seek to prohibit. Plaintiffs' Motion is unnecessary and, at best, premature, and should be denied.

## BACKGROUND

Plaintiffs claim that the opinions of Dr. Michelle Donaldson, Dr. Wayne Burkhead and Dr. Robert Pedowitz on general and specific causation are "identical." *See* Pls.'

Mot. at 2-3. This is untrue. While there is some overlap in the subject matter of Dr. Pedowitz's, Dr. Burkhead's and Dr. Donaldson's opinions, these experts are poised to offer separate and distinct opinion testimony on unique issues in this case. For example:

- Dr. Pedowitz will focus on the state of the art. That is, what was known and not known about the risk of chondrolysis and the continuous infusion of local anesthetics at the time of Beth Maxwell's surgery. *See* ECF No. 73-5 (Pedowitz Report).

- In contrast, Dr. Burkhead will testify regarding general causation:  whether the continuous infusion of local anesthetics can cause chondrolysis, and since it cannot and did not in this case, he also identifies alternative causative factors. *See* ECF No. 73-6 (Burkhead Report).

- Dr. Donaldson will focus on specific causation, i.e., whether continuous infusion of local anesthetics actually led to the alleged chondrolysis in Beth Maxwell. *See* ECF No. 73-4 (Donaldson Report).

In designating Drs. Pedowitz, Burkhead and Donaldson, and in providing robust disclosures of the bases for their respective opinions, Stryker neither seeks nor intends to introduce unnecessarily cumulative evidence at trial.

**ARGUMENT**

**I.    The Mere Fact That Some Overlap Exists Between the General Subject Matter of the Experts' Opinions Does not *Per Se* Render Their Future Trial Testimony Needlessly Cumulative.**

Complex cases such as this often require specialized experts within a broader field. *Nalder*, 254 F.3d at 1174-75. The Court should not exclude expert witnesses on the basis of mere numbers. *Id.* at 1173. Overlapping qualifications alone are not a valid basis to exclude an expert based on the "mere possibility that duplicative testimony could result." *Id.* at 1174. Further, although a court *may* exclude or limit evidence which is needlessly cumulative to the extent that such needless cumulation *substantially outweighs* its probative value under Federal Rule of Evidence 403, "[e]xcluding otherwise admissible evidence under Rule 403 is an extraordinary remedy that should be used sparingly." *Mendelsohn v. Sprint/United Mgmt. Co.*, 466 F.3d 1223, 1231 (10th Cir.2006) (internal quotes omitted). "Evidence is cumulative if repetitive, and if the small increment of probability it adds may not warrant the time spent in introducing it." *United States v. Davis*, 40 F.3d 1069, 1076 (10th Cir. 1994) (internal quotation marks omitted); *see also Kendra Oil & Gas, Inc. v. Homco, Ltd.*, 879 F.2d 240, 243 (7th Cir. 1989) (excluding expert witness where witness did not add a new angle or argument, but rather his opinion merely amounted to "me too").

Further, where there are complex medical questions at issue, multiple "experts in a single specialty may be able to bring to bear a variety of experiences or perspectives relevant to the case." *See* FEDERAL JUDICIAL CENTER, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 48 (2d ed. 2000). The Tenth Circuit has recognized that cases

with complex causation issues, such as the case at hand, "necessitate expert witnesses with narrow, specialized areas of expertise" within a broader general field. *Nalder*, 254 F.3d at 1174-75; *see also*, *United States v. Johnson* 780 F.2d 902, 904-06 (11th Cir. 1986) (holding that it was reversible error to exclude a third expert witness as cumulative where the excluded expert's analysis was somewhat different and his testimony was more comprehensive than the other experts and was therefore at least partially noncumulative).

Although all three are orthopedic surgeons, Drs. Pedowitz, Burkhead and Donaldson are poised to offer separate and distinct testimony at trial, each offering different perspectives and opinions. This is not simply a case of "me too." Here, there is no needlessly cumulative evidence to exclude. *See e.g. Sanders v. UDR, Inc.*, 2011 WL 864336, at * 2 (E.D. Va. March 10, 2011) (holding that where two doctors were in fact testifying on different subject matter, there was no cumulative medical expert testimony to exclude).

Stryker acknowledges that there is some overlap in the general subject matter between Drs. Pedowitz's, Burkhead's and Donaldson's opinions; however, they are not identical. Dr. Pedowitz will focus his testimony the state of the art prior to Beth Maxwell's surgery in November 2003, and thereafter. Dr. Burkhead will focus on general causation. Dr. Donaldson will focus her testimony on specific causation. For the sake of completeness and coherence, Dr. Donaldson's testimony may involve a discussion of certain general causation concepts. But her testimony is not identical to either Dr. Burkhead or Dr. Pedowitz. It is important to note that, "Rule 403 does not bar

cumulative testimony, only 'needlessly' cumulative testimony." *Thakore v. Universal Mach. Co. of Pottstown*, 670 F.Supp.2d 705, 720 (N.D. Ill. 2009). Any overlap between Drs. Pedowitz's, Burkhead's and Donaldson's testimony regarding general causation is not needlessly cumulative, but necessary in order to lay a foundation for their individual distinct areas of testimony, briefly described above.

It is generally accepted, even by Plaintiffs' own experts, that the etiology of glenohumeral chondrolysis is multifactorial. In fact, Plaintiffs' "general causation" expert, Dr. Trippel, has acknowledged this under oath. *See* Trial Tr. at 435:19-436:19, *Grossnickle v. Stryker*, No. 0703-02834 (Multnomah County Circuit Ct., Oregon Feb. 26, 2009), relevant portion attached as **Exhibit A**. Similarly, Dr. Kurzweil, one of Plaintiffs' multiple causation experts, also acknowledges that the cause of chondrolysis is multi-factorial. *See* Depo. Tr. at 19:9-22:2, *Creech v. Stryker*, No. 07-CV00022 DAK (D. Utah Dec. 3, 2011), relevant portion attached as **Exhibit B**. As a result of the multitude of factors at play, medical causation is complex in this case. Given the acknowledged spectrum of potential causes of chondrolysis, it is unreasonable to limit Stryker's ability to address the breadth of these issues through relevant expert testimony. Stryker should be allowed to present the testimony of Drs. Pedowitz, Burkhead and Donaldson, which is separate and distinct, as a result of their different subject matters, experiences, and perspectives.

Based on their designated expert witnesses, Plaintiffs themselves recognize the need to have multiple orthopedic surgeons testify about the different aspects of general and specific causation in this case. Plaintiffs claim they have designated "one

orthopedic expert to review the medical literature and opine on general causation, and to opine on specific causation (Peter R. Kruzweil, M.D.)." *See* Pls.' Mot. at 9. Plaintiffs have also designated Dr. Stephen Trippel to testify regarding "the science of cartilage and the state of knowledge at the time Defendants began selling their pain pumps for use in the joint." *Id.* Plaintiffs claim that Dr. Trippel is not duplicative of Dr. Kurzweil based not on his opinions or testimony, but because his report was prepared at the request of "other plaintiffs' lawyers for other purposes." Pls.' Mot. at 9. It is unclear for what purpose Dr. Trippel's report was prepared—or what difference that purpose makes in this context if the report sets forth his opinions and the bases therefore as required under Rule 26(a)(2). Plaintiffs have also designated Beth Maxwell's orthopedic surgeon, Dr. David Schneider, to testify on "all items contained in his medical records" and "the significance of various imaging studies, and the present and future effects of [Beth Maxwell's] shoulder condition." *See* ECF No. 73-2 at 2.

That is, Plaintiffs have also designated three orthopedic surgeon experts to testify regarding the same broad subject matter. These designations demonstrate their admission that multiple experts may bring different (noncumulative) experiences or perspectives relevant to the case. Further, it would be unjust to allow Plaintiffs use of their three experts while limiting Defendants to two experts just because they are orthopedic surgeons whose testimony is within the broad scope of specific or general causation. Stryker's experts will proffer separate and distinct opinion testimony, which is not needlessly cumulative, and thus Plaintiffs' Motion should be denied.

**II.     Plaintiffs' Motion is Premature – Any Concerns Regarding Potentially Cumulative Evidence Should Be Addressed at Trial.**

Plaintiffs' Motion is premature. It cannot be said at this juncture that Drs. Pedowitz's, Burkhead's and Donaldson's trial testimony would be unnecessarily cumulative. Therefore, Stryker should not be forced to choose one expert over another at this stage in the proceedings, especially when each expert has unique opinions relevant to the issues in this case. *See, e.g., Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 2006 WL 3718074, at *1 (N.D. Ill. Dec. 14, 2006) (denying a motion to exclude expert testimony and stating that until the court hears the testimony of the second expert it cannot know whether that testimony will be cumulative); *Green v. Schutt Sports Mfg., Co.*, 2006 WL 5127517, at *1 (N.D. Tex. Sept. 14, 2006) (denying a motion to exclude expert testimony and stating objection to cumulative evidence may be made at trial). As the court held in denying a similar motion by Plaintiffs' counsel in another pain pump case pending in the District of Wyoming, "this Court, at this point in time, is sitting in a vacuum in terms of the evidence and the testimony that has been offered and/or will be offered by the [defendant] and how the testimony, in fact, will be developed at trial." *See* Tr. of Telephonic Oral Ruling, *Woodard v. Stryker*, Case No. 11-cv-36-NDF, (D. Wyo. Jan. 27, 2012), copy attached as **Exhibit C**.

**III.    Allowing Stryker to Maintain Its Current Expert Witness Designations Does Not Cause Plaintiffs Any Undue Inconvenience or Expense.**

Plaintiffs claim that the Court should limit Stryker to "one general causation orthopedic surgeon expert and one specific causation orthopedic surgeon expert." (Pls' Mot. at 9-10.) Plaintiffs claim that they will be prejudiced by having to incur the expense

and inconvenience of deposing expert witnesses who will not be able to testify at trial due to the cumulative nature of their testimony. As explained, Stryker should not be required to limit its expert witnesses as its orthopedic surgeon experts will not offer needlessly cumulative testimony, but will testify to separate and distinct opinions. Moreover, Plaintiffs' claims of the potential for needless expense and wasted time are unfounded.

Plaintiffs are already privy to the opinions and subject matter of Drs. Pedowitz's, Burkhead's and Donaldson's testimony. On May 3, 2012, Stryker served Plaintiffs with its Rule 26 expert disclosures. *See* ECF Nos. 73-3, 73-4, 73-5, and 73-6. Stryker's expert disclosures included detailed reports relating to the opinions and testimony of Drs. Pedowitz, Burkhead and Donaldson. Dr. Pedowitz's expert disclosure and report was 67 pages in length and included his opinions and his bases for holding them, as well as the data Dr. Pedowitz relied on in forming those opinions. ECF No. 73-5. Dr. Burkhead's expert disclosure and report was 86 pages and included his opinions and the bases for each, as well as the data he relied on in forming those opinions. ECF No. 73-6. Similarly, Dr. Donaldson's expert disclosure and report was 32 pages and included the detailed information regarding her opinions and bases for each. ECF No. 73-4. The premise behind the requirement that parties exchange written expert reports and disclosures is to allow each party to effectively prepare to cross examine the expert at trial. *See* Fed. R. Civ. P. 26(a)(2) Advisory Committee Note. Notably, expert depositions are not permitted under the rules until after the party seeking to depose an expert has received that expert's report. Fed. R. Civ. P. 26(b)(4)(A). This is because, in

many cases the expert report and disclosures may completely eliminate the need for an expert deposition. *See* Fed. R. Civ. P. 26(b)(4)(A) Advisory Committee Note.

Moreover, Plaintiffs' counsel has already deposed Drs. Pedowitz and Burkhead in related pain pump cases and has indicated that depositions of these two experts in this case will not be necessary. To the extent Plaintiffs seek additional information beyond the detailed disclosures already provided, that is Plaintiffs' option, but Stryker is in no way "requiring" plaintiffs to incur this expense. In addition, Plaintiffs will depose Dr. Donaldson's on June 21, 2012. Thus, the outcome of this motion will not affect the number of these experts to be deposed by Plaintiffs. Similarly, Plaintiffs have not demonstrated any prejudice related to Stryker's designation of the same number of causation expert witnesses as Plaintiffs have designated.

## CONCLUSION

Drs. Pedowitz, Burkhead and Donaldson will not offer cumulative testimony at trial, but will present separate and distinct opinion testimony based on their different experiences and perspectives. The Court should not exclude or limit expert witnesses based purely on the number of experts or the mere potential for future duplicative testimony. In any event, the appropriate time for the Court to make such an evidentiary determination is not now, in a vacuum, but at trial when expert testimony is proffered and the context of the proffered testimony is known and may be properly considered. Thus, Plaintiffs' premature motion to exclude or limit expert testimony should be denied.

Dated:  June 18, 2012.

Respectfully submitted,


*s/ J. Lee Gray*
Maureen Reidy Witt
J. Lee Gray
HOLLAND & HART LLP
6380 South Fiddlers Green Circle, Suite 500
Greenwood Village, CO  80111
Tel.: (303) 290-1600
mwitt@hollandhart.com
lgray@hollandhart.com

and

Vaughn A. Crawford
SNELL & WILMER LLP
One Arizona Center
Phoenix, AZ 85004
Tel: (602) 386-6000
Fax: (602) 386-6070
vcrawford@swlaw.com

and

Mario Horwitz
SEDGWICK LLP
801 S. Figueroa St., 19th Fl.
Los Angeles, CA  90017
Tel.: (213) 426-6900
Fax: (213) 426-6921
Mario.horwitz@sedgwicklaw.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2012, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

Aimee H. Wagstaff, Esq.
ANDRUS HOOD & WAGSTAFF
1999 Broadway, Suite 4150
Denver, Colorado 80202
awagstaff@ahw-law.com

Jessica A. Andrew, Esq.
Paul Simmons, Esq.
DEWSNUP, KING & OLSEN
36 South State Street, Suite 2400
Salt Lake City, UT 84111
jandrew@dkolaw.com
psimm@dkolaw.com

_s/ J. Lee Gray_____